IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**BRENDA COOPER**                                                                                                         **PLAINTIFF**

V.                             **NO. 3:21-cv-00187-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                   **DEFENDANT**

**ORDER**

**I. Introduction:**

Plaintiff Brenda Cooper applied for disability benefits on January 14, 2020, alleging disability beginning on December 19, 2019. (Tr. at 15). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Cooper's application on February 25, 2021. (Tr. at 30). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Cooper has requested judicial review.

For the reasons stated below, the Court[1] affirms the ALJ's decision.

**II. The Commissioner's Decision**[2]**:**

The ALJ found that Cooper had not engaged in substantial gainful activity since the alleged onset date of December 19, 2019. (Tr. at 17). At Step Two, the ALJ found that Cooper had the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (*Doc*. 4).

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

following severe impairments: degenerative disc disease, depression, migraine headaches, and generalized osteoarthritis. *Id*. After finding at Step Three that Cooper's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Cooper had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions (Tr. at 20). The ALJ found that Cooper would be limited to occasional balancing, stooping, crouching, kneeling, crawling, and climbing of stairs/ramps. She could never climb ladders or scaffolding. Cooper could perform frequent, but not constant, handling, fingering, and reaching with the right upper extremity, except that she could reach overhead with the right upper extremity only occasionally. Cooper would need to avoid concentrated exposure to any temperature extremes, humidity, dust, fumes, odors, and poorly ventilated areas. She would also require a sit/stand option, which the ALJ defined as a brief positional change from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production. The ALJ found that Cooper had the ability to understand, remember, and apply simple routine instructions, make simple work decisions, and concentrate and persist for extended periods in order to complete simple routine work tasks with routine supervision. She also had the ability to interact and respond appropriately to others in a stable work setting, and the ability to adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually.

At Step Four, the ALJ determined that Cooper was unable to perform any of her past relevant work as a janitor, cafeteria cook, or fast-food worker. (Tr. at 28). Relying upon Vocational Expert ("VE") testimony, the ALJ found, based on Cooper's age, education, work experience, and RFC, that she could perform jobs that existed in significant numbers in the national economy,

including jobs such as cashier, inspector and hand packager, and small product assembler. (Tr. at 29). The ALJ therefore concluded that Cooper was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

#### B. Cooper's Arguments on Appeal

Cooper contends that substantial evidence does not support the ALJ's decision to deny benefits. Her sole argument on appeal is that the ALJ did not properly assess a medical source

3

opinion from Cooper's treating physician. On April 5, 2020, Cooper's primary care physician, Dr. Stacey Noel, completed a medical source statement assessing the effects of Cooper's physical impairments. (Tr. at 440-41). Among many other limitations marked on the checkbox form, Dr. Noel opined that Cooper could only occasionally perform handling (gross manipulation). Cooper argues that the ALJ erred by not adopting this limitation from Dr. Noel's medical opinion into Cooper's RFC. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

An ALJ considers medical opinions in the record as part of determining a claimant's RFC. 20 C.F.R. § 404.1545(a)(3). The ALJ does not defer or give any specific evidentiary weight to a medical opinion, regardless of the source. 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of each medical opinion based on a number of factors, including the supportability of the opinion, the consistency of the opinion with other evidence in the record, the source's relationship with the claimant, any specialization the source may have, and any other factors that tend to support or contradict the opinion. *Id*. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ will explain in the final written opinion how these factors were considered. *Id*. § 404.1520c(b)(2).

Here, the ALJ found Dr. Noel's medical source statement only partially persuasive, and he discussed, in great detail, the reasons for his assessment. (Tr. at 26-27). In his evaluation, the ALJ identified the extent to which the medical opinion was supported by Dr. Noel's treatment notes. The ALJ explained that Dr. Noel's treatment records generally showed mild to benign physical exam findings and conservative treatment, which supported some of his opined limitations but not others. Dr. Noel's treatment records were mixed with regard to Cooper's manipulative limitations. On one hand, the evidence showed that Dr. Noel had noted some swelling, tenderness, reduced

range of motion, and decreased strength in Cooper's right upper extremity. (Tr. at 368, 377, 396, 450, 457). And a cervical spine MRI from February 2020 showed disc herniation and spinal stenosis at the C5/C6 level. (Tr. at 352). On the other hand, as the ALJ emphasized, Dr. Noel's later treatment records noted that Cooper experienced pain improvement with medication (Tr. at 454), and she reported improvement in her cervical radiculopathy symptoms after having surgery in September 2020 (Tr. at 678-79). Plus, Dr. Noel's treatment notes showed that, on multiple occasions, Cooper did not present any upper extremity complaints and her musculoskeletal/neurological exam results were normal. (Tr. at 379-395, 452-53). This evidence justifies the ALJ's supportability finding.

Additionally, the ALJ found that other evidence in the record was inconsistent with Dr. Noel's opined occasional handling limitation. For example, just one month prior to her surgery, Cooper's neurologist made the following findings: "No weakness in upper extremities to include bilateral deltoids, biceps, triceps, wrist flexors and extensors, APB, opponens, [and] intrinsics. Strength 5/5. Negative phalen's bilaterally. Negative tinel's bilaterally. Hand grips equally strong." (Tr. at 509). Both before and after surgery, Cooper reported to her neurologist that her neck and arm pain was improved by medication to pain levels of 2/10 and 3/10, respectively. (Tr. at 495, 690). And, following a round of post-surgical physical therapy, Cooper showed increased cervical range of motion and right upper extremity strength. (Tr. at 719). If a claimant's impairments can be controlled by treatment or medication, they cannot be considered disabling. *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010). The ALJ was entitled to discount the persuasiveness of Dr. Noel's opinion on this basis.

The ALJ also found that Cooper's ability to perform "most" activities of daily living, including the ability to care for her disabled husband, was inconsistent with Dr. Noel's opined

manipulative limitations. (Tr. at 27). On appeal, Cooper disputes the ALJ's characterization of her daily activities. But Cooper's own reports support the ALJ's finding that she could handle personal hygiene for both herself and her husband, care for children, perform simple home maintenance like cleaning and laundry, prepare simple meals for her husband and child, go to doctor's appointments, attend church, and socialize. (Tr. at 19, 239-246). She also told her treatment providers that her husband was sick, and she was "having to take care of him." (Tr. at 25, 678). In any event, the previously discussed evidence provides sufficient support for the ALJ's decision not to fully credit Dr. Noel's medical opinion.  The Court finds no error in the ALJ's assessment.

The ALJ articulated his findings with regard to supportability and consistency. He thoroughly explained his decision not to adopt all of Dr. Noel's opined limitations, and he accounted for Cooper's neck and arm impairments by limiting her to only frequent (rather than constant) handling, fingering, and reaching with the right upper extremity. (Tr. at 27). Substantial evidence supports the ALJ's decision.

## IV. Conclusion:

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Cooper was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 4th day of October 2022.

_____
UNITED STATES MAGISTRATE JUDGE